PETER M. BORUTA, M.D., P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peter M. Boruta, M.D., P.C. v. Commissioner
Docket No. 11341-87R.
United States Tax Court
T.C. Memo 1988-172; 1988 Tax Ct. Memo LEXIS 203; 55 T.C.M. (CCH) 670; T.C.M. (RIA) 88172; 9 Employee Benefits Cas. (BNA) 2013; April 25, 1988. *203 Petitioner terminated 66-2/3 percent of its workforce in 1982. As a result, respondent determined that petitioner partially terminated its employee pension plan and trust and that, by failing to treat the trust account balances of the terminated employees as nonforfeitable, petitioner violated the section 411(d)(3), I.R.C. 1954, as referenced through section 401(a)(7), I.R.C. 1954. Held, the trust did not constitute a qualified trust under section 401(a), I.R.C. 1954, for plan years beginning on or after May 1, 1982. Kenneth M. Wissbrun, for the petitioner. Paul S. Horn and Will E. McLeod, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Chief Judge: This case is before the Court on a petition for declaratory judgment pursuant to section 7476. [1] The issue presented for our decision is whether petitioner's pension plan and trust constituted a qualified trust under section 401(a) for plan years beginning on or after May 1, 1982. The parties submitted *204 this case on a full stipulated administrative record pursuant to Rule 122, and the stipulated record is incorporated herein by this reference. Petitioner, Peter M. Boruta, M.D., P.C., a professional corporation, had its principal place of business in Rochester, Michigan, when it filed its petition in this case. Beginning on or about May 1, 1979, petitioner established and maintained the Peter M. Boruta, M.D., P.C. Pension Plan and Trust, a money purchase plan that initially constituted a qualified trust under section 401(a). In the Plan, petitioner included a provision that upon a full or partial termination of the Plan, the interests of the participants would be nonforfeitable. [2] *205 At the beginning of the Plan year commencing on May 1, 1982, petitioner's three employees, including Dr. Boruta, an orthopedic surgeon, all participated in the Plan. However, during that Plan year, petitioner closed its medical office, terminated its employment relationship with the other two employees, [3] and treated their retirement account balances as forfeitable to the Trust. [4]
In a final adverse determination letter dated February 10, 1987, respondent determined *206 that petitioner had partially terminated the Plan in 1982 because petitioner terminated a "significant number" (2 out of 3) of the Plan participants. Respondent further determined that petitioner, by failing to treat the terminated employees' Trust account balances as nonforfeitable after the partial termination, thereby violated the nonforfeiture provisions of the Plan and also of section 411(d)(3), as referenced through section 401(a)(7). Consequently, respondent determined that the Trust did not constitute a qualified trust under section 401(a) for years beginning on or after May 1, 1982. We consider whether the Trust constituted a qualified trust under section 401(a) for Plan years beginning on or after May 1, 1982. Respondent determined that petitioner partially terminated the Plan in 1982 and, by failing to treat the Trust account balances of the two employees as nonforfeitable, thereby violated the nonforfeiture provisions of the Plan and also of section 411(d)(3), as referenced through section 401(a)(7). Petitioner, however, asserts that factually no partial termination occurred in the present case. For the reasons discussed below, we hold for respondent.
In order for *207 the Trust to constitute a qualified trust under the provisions of section 401(a), petitioner must include provisions in the Plan that satisfy the requirements of section 411, relating to certain minimum vesting standards. Section 401(a)(7). Specifically, and as relevant to this case, petitioner must provide in the Plan that the rights of certain employees to funded benefits will be nonforfeitable upon the Plan's termination or partial termination. Section 411(d)(3). [5] *208 In the present case, respondent does not dispute that petitioner included a provision in the Plan that facially satisfies the requirements of section 411(d)(3). However, respondent asserts that petitioner, during the 1982 Plan year, partially terminated the Plan because it reduced its workforce in 1982 by a significant percentage. [6] Accordingly, respondent determined that petitioner, by failing to treat the terminated employees' Trust account balances as nonforfeitable upon the partial termination, violated the nonforfeiture provisions of the Plan and also of section 411(d)(3), for Plan years commencing on and after May 1, 1982. On the other hand, petitioner asserts that respondent failed to consider, as required by applicable regulations, [7] certain facts and circumstances including, as discussed in Kreis v. Charles O. Townley, M.D. & Associates, P.C. (hereinafter Kreis v. Townley), 833 F.2d 74, 79-80 (5th Cir. 1987), a purported lack of a bad faith or predatory *209 efforts to profit from forfeitures to the Trust. Petitioner contends, therefore, that in accordance with the factual inquiry discussed by the Sixth Circuit in Kreis v. Townley, supra, no partial termination occurred during its 1982 Plan year. In Kreis, the Sixth Circuit, applying the facts and circumstances test under the regulations, examined whether a partial termination occurred by inquiring, among other factors, into the bad faith or predatory efforts to profit from the plan forfeitures. See Kreis v. Townley, supra at 80, 83. The Sixth Circuit, however, applied that test in connection with its finding that *210 the percentages of terminated participants in the plans in question were too low (13.6 and 15 percent), standing alone, to warrant findings of partial plan terminations. In contrast, petitioner, which concedes on brief that it terminated 66-2/3 percent of its workforce, terminated a percentage of participants that, standing alone, generally is sufficient to warrant a finding of a partial termination. See Kreis v. Townley, supra at 80, 83: compare, e.g., Ehm v. Phillips Petroleum Co.,583 F. Supp. 1113, 1115-1116 (D. Kan. 1984), with Tipton & Kalmbach, Inc. v. Commissioner,83 T.C. 154, 161 (1984). Notwithstanding this significant percentage reduction, however, petitioner argues that its alleged lack of bad faith or predatory efforts in the present case precludes a finding of a partial termination. Indeed, in Kreis, the Sixth Circuit stated that "as a general matter we must look beyond the mere percentages unless and until Congress or the Treasury Department provide otherwise." Kreis v. Townley, supra at 80. In our view, however, petitioner is attempting to use a sword as a shield. Under Kreis, the inquiry into bad faith or predatory efforts assisted the Sixth Circuit in examining *211 whether a partial termination occurred after the percentage of terminated employees was insufficient, standing alone, to support such a finding. However, standing alone, the absence of bad faith or predatory efforts does not, as petitioner contends, preclude a finding of a partial termination when, as in the present case, the employer terminated a significant percentage of plan participants. See Kreis v. Townley, supra at 80-81. Even if we were to accept petitioner's argument, we are not persuaded that petitioner lacked bad faith or predatory efforts in the present case considering that, by closing its office and determining that it no longer desired or needed the services of the two employees, petitioner initiated their departures and, by failing to treat their Trust account balances as nonforfeitable, petitioner created a potential for a windfall to the remaining participant. [8] *212 See, e.g., Tipton & Kalmbach, Inc. v. Commissioner, supra at 160. We can only conclude, therefore, that the inquiry under Kreis regarding bad faith or predatory efforts is not helpful to petitioner in the present case. On this record, petitioner simply presents no facts and circumstances indicating anything contrary to a partial termination during the 1982 Plan year as a result of a significant percentage reduction in Plan participants. [9] *213 See, e.g., Tipton & Kalmbach, Inc. v. Commissioner, supra. Accordingly, we find that petitioner, by failing to treat the balances of the two employees' Trust accounts as nonforfeitable after a partial termination, violated the nonforfeiture provisions of section 411(d)(3). Petitioner presents no further arguments of merit. Accordingly, we hold that the Trust does not constitute a qualified trust under section 401(a) for the Plan years beginning on or after May 1, 1982. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Specifically, petitioner included the following provision in the Plan: Upon full or partial termination of the Plan or complete discontinuance of contributions, any unallocated funds shall be allocated to Participants in the same manner as Company contributions, and the interest of each Employee who is a Participant in the Plan, retired Participant, or withdrawn Participant in the accumulations in his Account, shall be nonforfeitable, and shall continue to be paid to him if he be already retired, or if he be not retired shall be paid to him at and after he reaches his Early Retirement Age in the same manner and under the same options as provided for retired employees * * *. 3. At this time, Dr. Boruta was planning to join another medical practice. Accordingly, the other two employees were terminated on October 25, 1982, and December 17, 1982, respectively, because their services were considered unnecessary and duplicative of the services of the employees in Dr. Boruta's new practice. ↩
4. Subsequently, at the time of petitioner's own corporate dissolution on May 1, 1983, petitioner completely terminated the Plan and treated the Trust account balance of the remaining participant, Dr. Boruta, as fully vested and nonforfeitable. ↩
5. Section 411(d)(3) provides, in pertinent part, that: Notwithstanding the provisions of subsection (a), a trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that -- (A) upon its termination or partial termination, * * * the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable * * *. ↩
6. In this regard, respondent asserts that, because Congress intended that "a partial termination might include, under certain circumstances, a large reduction in the work force * * *," petitioner, by reducing its workforce by 66-2/3 percent (2 out of 3 employees), partially terminated the Plan. See H. Rept. No. 93-807 (1974), 1974-3 C.B. Supp. 236, 300; S. Rept. No. 93-383 (1973), 1974-3 C.B. Supp. 80, 129. ↩
7. Petitioner cites sec. 1.411(d)-2(b)(1), Income Tax Regs., which provides, in pertinent part: Whether or not a partial termination of a qualified plan occurs (and the time of such event) shall be determined by the Commissioner with regard to all the facts and circumstances in a particular case. Such facts and circumstances include: the exclusion, by reason of a plan amendment or severance by the employer, of a group of employees who have previously been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan. ↩
8. Although, as stated in Kreis v. Charles O. Townley, M.D. & Associates, P.C.,833 F.2d 74, 80 (6th Cir. 1987), the potential for windfall is not sufficient to support a finding of bad faith, we note that a windfall clearly is not a result that Congress intended when it enacted section 411(d)(3) to protect employees in the event of terminations or partial terminations of qualified trusts. See Tipton & Kalmbach, Inc. v. Commissioner,83 T.C. 154, 160-161↩ (1984). 9. In this regard, we are most persuaded by the substantial percentage reduction in the present case, noting that "The regulation's plain language clearly directs us to consider all the facts and circumstances, of which the percentage of excluded plan participants is but one, albeit generally the most persuasive one [Emphasis added]." Kreis v. Townley, supra at 79.